The Chancellor.
This is a petition for a divorce under the act of 1824. The cause alleged is adultery. The parties lived together, as man and wife, nearly seventeen years, and had a family of five children. The petitioner states, that shortly after his marriage, from a variety of circumstances, as well as from expressions made by his wife, he was induced to believe her unfaithful to him; but out of regard to his children, and from fear of the disgrace which would follow a public disclosure of her conduct, he continued to reside with her until the year 1828, when she made to him a confession of ner guilt with a particular person, and he separated himself from her. The answer of the defendant denies the charge made in the petition, that she had been unfaithful to her marriage vows, but admits that on one occasion she did, from fear of her husband and threats of personal violence, confess that she had had criminal connexion with the person stated in the petition, but that in the *140 same conversation she again denied it, and has ever since and still does deny on her part any charge of criminal conduct. This answer is not under oath, and could not be, under the provisions of our statute.
The whole case turns upon the truth or falsity of these charges, and of this issue the petitioner holds the affirmative. There is only one witness to the fact of adultery offered by the petitioner. That witness is Abraham Anderson. His evidence if to be relied on, proves the case clearly and explicitly. He states, that in February, 1828, in the morning, after breakfast, he saw the defendant, with William D. Williamson, in the act of adultery: that Mr. Miller was at home, and breakfasted with his family the same morning: that the house in which the act is alleged to have taken place, was about twenty or thirty feet from the dwelling-house; and that the road to the barn, runs between the two. This witness is a laboring man, working sometimes in one place and sometimes in another; at one time in Somerset county, at another in Middlesex, and at another on the canaL At this time he is, and at the time of his examination he was, in the employ of the petitioner.
There is much in the testimony of this witness, standing alone, to create distrust in my mind. The story is of a most unnatural character. That these parties should have committed such an act, under such circumstances, in the day-time, when Mr. Miller was at home, and within twenty or thirty feet of the dwelling, where they must have been exposed to certain detection, is almost beyond belief; this, too, by a man who then lived with the family as a teacher, and who, as we may suppose, could have secured a far more favorable opportunity for the accomplishment of such a purpose. He says they were in the house from fifteen to twenty minutes. The witness never communicated it to any person but a negro man, and gives as his reason for not telling Mr. Muller that he had no witness but the negro. He never told Mr. Miller down to the very moment of his examination, though he made two memorandums of what he saw at the time, and kept them in his trunk. These memo *141 randums are not exhibited by him. One he gave to. the solicitor for the petitioner. This gentleman says, that a paper containing the substance of what the witness has stated, was handed him; but still it is not produced. He was not bound, certainly, to do so; but to remove any imputation of fraud in the witness, it might legally and proper ly under these circumstances have been shown and offered to the opposite party to use if they thought proper. But I mean to draw no unfavorable inference from tins circumstance. Why this man should have made two memorandums of this occurence, and yet never have mentioned it to Mr. Miller, I cannot understand. I confess my incredulity in such statements, especially from a witness who from his own account of the matter has no stronger claim to the confidence of the court. It would really be a strange case if this petitioner, who had entertained suspicions for seventeen years, could find no other persons than this man — as it would seem a stranger — to make proof of misconduct in his wife.
William D. Williamson, the person with whom the adultery is alleged to have been committed, is examined as a witness by the defendant, and in the most positive terms denies the charges made. He uses this strong language on the subject: “ Witness never had any improper connections with Mrs. Miller on the hearth, in the room, nor near it, nor in any other place, either by word, act or deed" Thus the only positive evidence of the fact of adultery, is as positively denied by the very man charged with the act. There is gross and palpable perjury in the one or the other of these witnesses. There is no mode by which the evidence can be reconciled. I am not called upon to say, nor is there any way by which I can say, with whom the crime rests. I confess, my lelief is, that the last witness speaks the truth. The whole story is improbable on the face of it, and is against that character for virtue, which Mrs. Miller appears from the evidence to have sustained among all her neighbors for her whole life.
An attempt is made to impeach Mr. Williamson, on the ground of his religious belief. Two reputable witnesses have clearly *142 shown his disbelief of some of the leading doctrines of the church at this day, and that he ridiculed attending religious worship on 'the sabbath. This evidence, while it affects the character of the witness in his general views on religion, and would constitute, as it seems it did with those gentleman, a good reason against placing their children -under his instruction, is not sufficient to destroy his competency as a witness. ’ The conversation of the witness with judge Howell was of a controversial character — a dispute about doctrines and tenets — and it is true that the witness exhibited a reckless feeling on these subjects. I do not find that he ever denied the existence of a God, or a future state of rewards and punishments.
Upon evidence like this, with a witness stating so improbable a story, and that contradicted so explicitly, it cannot be expected that I should be willing to ground a decree of divorce. 1
There is, however, another view to be taken of this case. The defendent has admitted her guilt to her husband. In her answer she declares that she did admit it, but it was done in fear of her husband, and under threats of personal violence, and that she recalled her words in the same conversation. The cause of the petitioner is evidently rested much on this admission. When asked by captain Tuttle, at the time the articles of separation were signed, respecting this admission, the defendant did not deny it as she might have done at that time — for it rested between her and her husband alone — but frankly declared she had made the admission, but that it was false, and she would not make it again for her life. These admissions are not to be received, as a general rule, with much faith. They are competent when connected with other proof, but not without. Betts v. Betts, 1 Johns. Ch. Rep. 198. The reason assigned is, that there is great danger of collusion between the parties, or of confessions being extorted. They must and ought to be received with jealousy. In the present case there is no reason to believe that there is any collusion ; but is there not, from the whole case, the strongest ground for believing that they have been induced by fear? There is, I admit, no positive evidence under what *143 circumstances they were made. But why was the admission recalled in the same conversation 2 "Why did the defendant say to captain Tuttle that she would die before she admitted it again The whole character of the petitioner, and his conduct towards his wife, leaves a strong impression on my mind that she has stated the truth in her answer, that she made the admission from fear of her husband. A great many witnesses have been examined, the neighbors of these parties. They one and all speak of Mrs. Miller as a woman of good and virtuous reputation — as subdued woman — and several of them speak of her as being in fear of her husband. He is shown to have treated her often rudely, even to blows, and to have left her in tears. His temper is represented as hasty, easily put out, and jealous. IHs own petition declares that he was jealous of her from the first. Instead of asserting her rights, and taking her own part, she always yielded, and sunk down under his bad treatment. It is not necessary that it should be positively proved that she made the confession under fear: it may be inferred from the general eonduct of her husband toward her. Great allowance must be made for a woman situated as Mrs. Miller was. She ought never, it is true, to have been forced into so indiscreet a course. She was evidently broken down and disheartened. She did, however, correct her error on the spot, but it was too late. Her husband seized upon the admission, and has never yielded his grasp.
But the parties agreed to separate, and captain Tuttle, with Ms wife, who was the sister of Mrs. Miller, were sent for. On that occasion Mrs. Miller was willing to give up every thing. She then signed articles of separation, and left her home, with no other than the nominal provision of one dollar. Is this the course of conduct to be looked for in a hardened woman 2 Had this been her character, she would have insisted on the uttermost farthing. She gave up every thing. She declared her innocence and said she signed the articles freely. She acted, in my judgment, like a broken-hearted woman.
It is stated by one of the witnesses, that afterwards, at the *144 Baskenridge church, he asked captain Tuttle whether he believed these stories about Mrs. Miller; and he .answered that he did not — that he believed she was an innocent woman.
Whether, therefore, I look at the positive proof by which this case is attémpted to be sustained, at the admissions made by the defendant, or at the general circumstances connected with it, I see no ground for divorcing these parties on the present application. After carefully reading and examining the whole evidence, I feel bound to declare my decided impressions to be, that the defendant, Mrs. Miller, is the injured party. The evidence does not satisfy me that she has committed adultery. The petition must be dismissed, with costs.
Petition dismissed.
(Note. An appeal was taken by the complainant from the decree in this cause. The appeal was argued at May term, 1839, and the decree of the chancellor affirmed, with costs.]